I'd like to first thank U.S. District Court Judge Darnell Jones, who is sitting with us this morning. It's very much appreciated, Judge Jones. Thank you. My pleasure, sir. We'll call the first case, Marshall v. Krones. Thank you, members of the panel. My name is Jerome Muranowski, and I represent the appellant, Marshall Investments Corporation. I'd like to reserve three minutes of my time for rebuttal. This is an appeal from a dismissal of Marshall's complaint seeking defense costs incurred as the result of alleged fraud by Krones, Inc. and its German parent, Krones AG. Krones' fraud, as alleged in the complaint, was part of the fraud of Greg Podlucky and his company, LeNatures, based in Latrobe, Pennsylvania. That fraud led to the collapse of LeNatures and the eventual imprisonment of Podlucky. This case and Marshall's involvement arose from when Podlucky sought financing for four lines of bottling equipment for a new plant in Phoenix, sought that from Marshall and Krones, the manufacturer. Before the financing closed, Marshall and CIT received calls questioning whether the equipment price was actually $184 million. CIT and Marshall went right to the source to determine whether the question raised had any validity. They went to Krones, the manufacturer, who would know what the price of the equipment was. They went to them to verify the purchase price. Krones, it is alleged in the amended complaint, in this action and in the many complaints which are part of the appendix. It was clear in the underlying complaints that there were claims against Marshall for its own wrongdoing. So it had to defend those claims. In other words, it had no choice. In that context, how is this different from the Minnesota Supreme Court's decision in Farr and the Wisconsin Supreme Court's decision in Crickle? It is different because the issue that were raised in terms of wrongful conduct on the part of Marshall was either that they should have disclosed the question and let other people decide or should have investigated it further. You mean disclosed the tip that Marshall had received from OFRIA? I don't know if it was a tip, there was concerns that he raised, a person that had not been previously known to CIT or Marshall, not saying the price is inflated, but raising issues which were resolved. Even, just so I understand this a little bit better, but even apart from the OFRIA tip, weren't there allegations of other instances of misconduct on the part of Marshall? Yes, in the MB financial complaint and in the COMPASS complaints, there were allegations of other wrongdoing. So Marshall had to be in the case no matter what? They did, Your Honor. The issue here is... It isn't really the issue here, it isn't your problem and the hurdle you need to get over. The narrowness of the law as applied under 914.2 of the restatement by both the Minnesota and Wisconsin courts. Let me address the Wisconsin law first, Your Honor. The Wisconsin law is, I believe, clear and stands for the proposition that if a party is defrauded, if a party is defrauded and that fraud leads to litigation, them being involved in litigation against third parties, then that victim is entitled to recover its attorney's fees in defending that litigation. That I think is the holding in Wienhagen, the 1922 Supreme Court case in Wisconsin, which started this line of cases referred to as the Wienhagen exception. That case, the case there talked about sort of straight causation. It simply said that if the wrongful acts of the defendant, fraud, has involved the plaintiff in litigation with others, the victim is entitled to recover defense costs from the wrongful actor. That's exactly what happened here, at least that's what we allege, because Marshall would have never gotten involved, never went forward with a leasing financing transaction in which they were financing equipment at $184 million that only cost $90 million. What about the Wehagen, the application of the Wehagen rule in Wisconsin to only exceptional circumstances? The case law in Wisconsin is that if it's the exceptional circumstances is fraud. Wienhagen was a fraud case, and in fact it was a case that involved, was the principle that was drawn by the Supreme Court was that in the case of fraud, that drives somebody or projects them into litigation, then they're entitled to their defense costs as a natural and proximate result of the fraud, the tort. The exceptional circumstances language comes from the Meese decision, and I think the Meese decision went, or did, go slightly beyond what Wienhagen did. It went from just fraud to breach of fiduciary duty, and that was a case involving real estate brokers, real estate agents, who did not take care of an elderly family, elderly couple who was selling their farm, who made misrepresentations, or not misrepresentations, but didn't fully advise them of risk that they were undertaking. So the court there went and said, we're going to limit it to these circumstances because they were going outside of the fraud area. And that's the, I think, the reference to exceptional circumstances. The fraud case, the fraud application of this doctrine was also reaffirmed and repeated, at least by the Wisconsin Court of Appeals in State of Wisconsin versus Anderson in 1997, Wisconsin Court of Appeals decision, which again, it was a straightforward, it's a straightforward causation issue. Is there a tort, and tort of fraud, and if that tort of fraud led to incurring of litigation costs and defending third party litigation, basic causation, then you're entitled to recover. That's the difference between Minnesota and Wisconsin law. I still, I'm still in a little trouble because as I see this case, you're defending against the malfeasance of somebody else in the underlying case, and that was Crohn's, is that correct? Defending against the malfeasance, we're defending, yes, because Crohn's did not disclose what the actual price of the equipment was, defrauded, Marshall and CIT, the transaction went forward, and that led to, that was part of the fraud, they completed the fraud. But you're also defending against your own misconduct, whether in fact you were wrongful in your conduct or not, there were assertions made against Marshall and you were defending against that misconduct, weren't you? Yes, there is any time that a fraud, any victim of a fraud who is then subsequently sued in this type of a big transaction is going to be sued, there are going to be lots of allegations, we don't believe that any of those allegations were well taken. But the fact that the allegations were made that Marshall could have done something such of Crohn's does not change the fact that the, that Crohn's was responsible, this litigation arose because Crohn's misled the lenders in the first instance. I'm sorry, I'll just finish this one thought, every case that I have looked at essentially says that if you are defending against the wrongful conduct of another and you're defending against your own wrongful conduct, you are not entitled to file a third party claim to counsel, every case I've looked at says that, so why, I mean we would be running against the tide of opinion if we were to find in your favor, so why should we? I think that Wisconsin law requires that this court find in our favor, because the Wisconsin law, Weinhagen, what exactly, is it decisional law that you're talking about? The decision, I'm talking about the elements that are applicable under Wisconsin law. There has to be a wrongful act. Applicable under case law or statutory law? Case law, it's all case law developed, it's an equitable exception developed starting with the Weinhagen decision, an equitable exception to the American rule. It provides two elements, one, wrongful act by someone, and that's limited, it's limited to fraud or something very exceptional, because that's the way that the Wisconsin courts limit the scope of this exception. Obviously all courts are worried about expanding this exception to potentially swallow up the American rule regarding allocation of fees. What duty did Marshalls owe to the investors? It owed a duty to inform the information, accurate information that they received. Now they had- Weren't they not, were they not sued for a breach of that independent duty? Yes, your honor, but they, yes, they were, your honor, they were. Now that's the MB and Compass litigations. The litigations on behalf of the trustee were much, were focused on not doing adequate due diligence or did not, there wasn't adequate investigation of whether the price was actually accurate or not. What about the word only in comment B, where it says when a cause of action for an alleged or an alleged cause of action against a defendant in a proceeding exists only because of a tort of another? Under Wisconsin law, which is probably presumptively the law that would apply here, the Weinhagen exception has never applied the word only to the causation. That is not something that they have adopted from the restatement. They have very straightforward causation if it's the proximate cause, natural and proximate cause. How does in fact proximate cause play into this? What exactly are you saying that, that the fraud of Krohn's was the proximate cause of your getting involved in litigation and therefore incurring counsel fees? Yes, because this, this, because the transaction never would have gone forward without the fraud of Mr. Pylecki, who was in jail, and Krohn's, who defrauded, who defrauded the lenders. Well, it could be said that the litigation might not have gone forward had you alerted the investors in this case that will free his tip. That's a question of fact, whether that's true. Certainly in the case of when a lender is evaluating whether to disclose something and they have concluded absolutely with a great deal of confidence that the information is not accurate based on discussions, multiple representations from the manufacturer of the equipment, they've concluded that that is false, then they are, they, it makes no sense for them to disclose it to potential investors because that would then expose them to defamation claims. Is your argument based on your defense as opposed to what was in the pleadings in terms of the complaints filed against you? Yes. And that's, that's very true, Judge Jones. The pleadings certainly alleged wrongful acts on the part of Marshall, and, but the approximate The lower court couldn't go outside of the pleadings, correct? I believe they can, Your Honor, and I think Well, to the extent that the judge acknowledged that in her, in her opinion. I think that the correct way to evaluate this on the part of the district court in this is to consider whether it was indeed the proximate cause, whether the fact that the, if the fraud of Krohn's caused this litigation, which there's no doubt really that it did because it never would have gone forward, but for Krohn's fraud, if it, if it caused this litigation, then that should be the end of the inquiry and the, and, and at least at the motion to dismiss phase, there is, that's the issues of proximate cause and whether it was, this all was caused because of Marshall or because of Krohn's or whom ought to be determined at the, at trial or at summary judgment after a factual record is developed. Mr. Marinowski, thank you very much. We'll get you back. Can I just ask one additional question here? The, and I'm not asking you to give up a position here, but don't you have, we have to examine the MDL complaints and look what's alleged. Will you acknowledge you have a tougher case in the MB and the Compass cases? Yes. Okay. Yes, Your Honor. Thank you. Thank you. Mr. Ronski. Good morning, may it please the court, Andy Ronski, a Foley and Lardner for the appellees Krohn's Inc. and Krohn's AG. I'll be brief this morning. I only want to address two points, the first one being wrongful involvement and the second one being race judicata and claim preclusion. On the first, I think the context and the kind of first principles here are important. You know, Krohn's and Marshall were co-defendants with a number of others in all of these MDL cases. They were alleged to have been joint tort feasors in every case in which Marshall is seeking fees from Krohn's. And it's basic U.S. jurisprudence that the American rule precludes Marshall from recovering fees in those circumstances. That rule, for good reason, is firmly entrenched here and its exceptions are few and they're narrow. One of them is what's reflected in Section 914 of the Restatement Second of Torts and I think it's best known, best referred to as the wrongful involvement exception. Marshall tries to treat its claims against Krohn's as if they're ordinary run-of-the-mill tort claims, but they're really not. They have to fit within the confines of that exception. How about a but-for test? Marshall would not have been involved in that litigation but for Krohn's' failure to or negligence in verifying the Okiya tip. Well, Judge Fuentes, but-for causation, as everyone knows, isn't even sufficient in a run-of-the-mill tort case. The Harpster decision from the Minnesota Supreme Court makes that clear. So why would but-for causation be sufficient here in a narrow context of an exception to the American rules? How about proximate cause? Proximate cause, I'm sure, is part of the equation, Judge, but what does proximate cause mean? I think it has to be viewed in the context of the exception. If you look at the different formulations that state courts and federal courts have used to articulate the wrongful involvement exception, typically what they say is you can't be defending any acts or omissions of your own, any independent duty. Some of those cases, particularly where the fee seeker is the plaintiff in the case below, use the proximate cause formulation.  Is this wrongful involvement rule really a separate rule? I mean, the wrongful involvement rule, which you cite and you're arguing here, is not the rule that's been adopted in Minnesota or Wisconsin. Well, not in those words, Judge, but if you look at how the cases are applied, they're applied consistently with the only language in the restatement, the references to exceptional circumstances in Meese. If you look at the result in CREFAL, I think it's perfectly consistent with wrongful involvement. And to get back to proximate cause, it's not inconsistent with a wrongful involvement requirement to say that there must also be proximate cause. Proximate cause is always assessed and evaluated and applied in the context of the claim that's being pursued. What are the elements? Here we've got a narrow scope and a narrow purpose of this exception, and proximate cause has to be evaluated under the penumbra of the broader policies of the American rule. That is a jury question, isn't it? Judge, anything can be a jury question, right? But when there's no reasonable dispute, then it's not a jury question. And here you look at the allegations of the complaint. There are numerous cases dismissing cases like this on a motion to dismiss, because the fact that Marshall may or may not have a defense to these underlying allegations is not what's salient. What's salient is what is it defending against. It is not defending against it simply took a piece of paper from Crone's and passed it along to Enby and Compass, and it was sued entirely for what Crone said. It was sued for breach of contract, its participation agreements with Enby and Compass. It was sued for representations that the underlying complaints alleged to have been made long before Crone was even on the scene. Is it your position that any claim, any claim against Marshall of misconduct, no matter how strong, no matter how weak, any claim against Marshall that, Marshall, you misled me, any such claim would prevent it from filing a third-party claim for counsel, please? I would say that that is the law under Minnesota and Wisconsin, and that's the law under the  No matter how baseless the claim, once it's forced to defend a claim, it cannot seek counsel. Yes, I think that's the rule. If you look at the Farr case in Minnesota, I think that's a great example of that basic principle. You have two defendants, a manufacturer of a tire, a distributor of the tire. The plaintiff sues the distributor for breach of warranty, even though the opinion makes clear that the distributor didn't make any independence. Was there any negligence assessment against the distributor? Excuse me? Was there any negligence assessment against the distributor? Did that not go to a jury? It did go to a jury. Was there? Well, was there? Just because the posture arose in that context doesn't mean that it has to go to a jury. That's when the issue got raised. But the fact of the matter is, in that case, underlying, the jury and the judge found that the distributor was entitled to 100 percent indemnity from the manufacturer because it was completely passive. That's your example. It did absolutely nothing wrong. But somebody made a legally spurious allegation of it, a breach of warranty, and under Farr, that was enough to preclude application of the doctrine. I mean, I think that case is spot on to your hypothetical, Judge. Should it make any difference to us that Colorado courts seem to have adopted a looser rule, that New Jersey has adopted a different rule, that the states seem to be taking a look at 914-2 in a broader sense? Should that make any difference to us in deciding this case? I don't think so, Judge. I mean, obviously, everyone cited a lot of cases to give you a sense of what the lay of the land is. But the reality is that this case is governed by either Wisconsin or Minnesota law, and I don't think there's a dime bit of difference between the two. And I both think that whether in word or deed, they rigorously apply this wrongful involvement exception. Now, I'd like to turn for a minute, if it's all right, to the issue of res judicata. Let me ask you about the farm credit and the trustee cases. Yes. Aren't they a little different? They are a little different, but substantively, I don't think they're any different. And that is because if you look at those cases, their core allegation is that Marshall's decision not to disclose the tip was a breach of a duty. Now, Marshall says, we didn't have that duty. We don't owe that duty to anybody. And I say, well, enough. Maybe you don't. Maybe you do. But that's not the issue. That's not the merits. OK. But vis-a-vis your client, I mean, that argument might play against someone else. But vis-a-vis your client, isn't Marshall saying, look, we didn't disclose the tip because Crohn's told us there was nothing to offer you as information. The price was right. $184 million was right. That's true. But if you look at the allegations, for instance, of the farm credit complaint, there is a very clear allegation in there that says, regardless of what you were told by Crohn's and regardless of what your conclusions were about that, we were entitled to know about this because that would affect our risk calculation. And we, as a lender coming into this deal, were entitled to make our own judgment about that. And so farm credit got the same. OK. So Marshall says, and I'm not putting words in Marshall's mouth, but I think what they said was, OK, so what? But you can't claim that against us. But again, that's just a defense on the merits. It doesn't go to the core of what the allegations against it were. And farm credit wasn't saying, again, purely passive pass-through. You know, this isn't like the O'Connell case where I gave you a piece of paper or I give you a piece of paper and you give it to Judge Fuentes and Judge Fuentes says, oh, I'm going to sue you for that breach of warranty. And you say, nope, I got that from Roski. That's his problem, not my problem. That's not what happened here. There was independent conduct. Farm credit and Kirshner allege. In essence, you're saying that farm credit and trustee, in the farm credit trustee cases, they're saying, look, even though Crohn's told you there was nothing to it, you had an obligation to the investors to say there's been a question raised. We checked it out with Crohn's and there's nothing to it. You had an obligation to give us the opportunity to do something ourselves. Absolutely, Judge. And the allegations, frankly, were stronger than that. The allegations were essentially that Marshall conspired with CIT to conceal that information and not to disclose it because it didn't want to threaten the closing of the deal and it stood to earn and, in fact, did earn a whole bunch of fees when this deal closed. So this is not, you know, some purely innocent, passive kind of, oh, we got caught up in this web of litigation. Even the farm credit and trustee, which are different because there's not contractual privity with Marshall, still allege breaches of independent duties by Marshall, independent action and omissions by Marshall, and that just brings it under the same rule and makes them really not distinguishable in any way from the position in the MV and Compass cases. On claim preclusion, I'm sure it's in the record, but just for the timing. So our motion to dismiss in this action was filed in late February of 2013 and the briefing was completed in mid-April. Shortly after that, Marshall reached a settlement agreement with MV and Compass and it filed joint motions with them, to which Crohn's was not a signatory, on May 2nd of 2013. Judge Ambrose entered orders dismissing all aspects of the MV and Compass claims with prejudice, which included the third-party claims of Marshall against Crohn's, on May 6th. And four days later, Judge Ambrose issued her decision in this case. So it is true that the issue of claim preclusion was not raised below, but there frankly was no opportunity on which to do so. Nonetheless, I believe that this panel can consider claim preclusion for the first time, even though it was not raised below. And I think that's pretty clear from the U.S. versus five unlabeled boxes case. Mr. Ronski, didn't Marshall specifically retain its claims against Crohn's in the underlying cases? Well, Judge, they thought they did, and maybe they tried to, but the reality is they carved something out in a settlement agreement to which my clients were not a party to. They did not ask Judge Ambrose to carve out any claims against us in the orders dismissing the MV and Compass cases, and nothing there does. And we were not a party to the settlement agreement. We were not a party to the underlying motions. And I don't think that they have the power, through an agreement, to reserve claims against someone else. Either raised judicata claim preclusion applies, or it doesn't. What should they have done? What should Marshall, what could Marshall have done at the time? Not settle. If their claims against us were that important. That doesn't sound like a good idea. I mean, that discourages people getting into settlement agreements. Well, but Judge, that's what happens when you split your claims, and we all know it. We have cases where people run around and file three or four different cases, and the first one that goes to judgment, the first one dismissed on the merits controls. And, you know, here's a hypothetical for you. In case they had not, let's just assume they had not settled, but that either the MV case or the Marshall case went to trial. And there was a ruling that Crohn's was liable. I'm certain that in the farm credit case and in the trustee case, they'd be trying to assert offensive collateral ensemble against us. And vice versa, if that trial had resulted in an adjudication that Crohn's had no liability to Marshall, all of these other cases would go away. The fact that they decided... Didn't they preserve the right to go against you in the settlement agreement? They purported to, but that settlement agreement does not have any effect on a judgment of a court. Judge Ambrose, that was not presented to Judge Ambrose. She was not asked to carve that out of her order. That order is a dismissal of the entire claim on the merit, including the third-party claims, because MV and Compass would not have settled that case without a dismissal of those third-party claims. And they don't get to just split their claims and say, okay, this is in our economic interest to settle this over here, but we want to keep this. Claim preclusion precludes that. You've got a final judgment on the merits. You've got a complete identity of the parties. And there's no question, I think, that both cases, both claims, just seek different remedies on the same facts, the same evidence, the same exact representations. It's the same cause of action. And essentially, it's a very, very straightforward application of the doctrine of claim preclusion. And they don't have a single case that stands for the proposition that you can carve out race judicata effect in a settlement agreement. In the Gonzales case, which we cited, they say that that's the case. That's not true. There was a reservation of rights in Gonzales. The court held that the claim was barred nonetheless, and that issue wasn't even litigated. The issue in Gonzales was whether there was identity of the parties. So it's a pretty straightforward application of the doctrine of claim preclusion. They split their claims. Why did they split their claims? Well, we know that they didn't file this action until 2012, right on the precipice of the global settlement in which they were being excluded. They didn't come up with this claim until then. It was strategic. They strategically split their claims. Then they settled, because that was in their interest. And there were consequences to that settlement under the law. Very straightforward. Thank you. Thank you, Mr. Hronsky. Mr. Miranowski? Thank you, judges. First on claim preclusion, the claim preclusion applies only to two suits, the MB and Compass suits, because that's the only one where a final judgment has been entered. The final judgment will be entered with respect to the trustee, which will, in the judgment, carve out the exception for pursuing Crohn's. I think that was also the case with the farm credit decision, the borrower entered by the bankruptcy court. And most importantly, this is not an issue that was raised below. And I don't believe that it would be, and we would urge the court not to exercise its discretion to entertain the issue now without a full hearing on it, without Judge Ambrose's consideration, especially given the fact that the settlement agreement so clearly carved out these claims against Crohn's. Mr. Hronsky was incorrect on one very important point. He claimed that in the trustee's complaint, he alleged that Marshall conspired with Podolaki and others in this matter. He did not. The trustee did not make that allegation. What he alleged, actually, was that Crohn's conspired to commit fraud with Podolaki and others, but not Marshall. He came up with some aiding and abetting theory, which I think, you know, this is not in the record, but I would say that that was a huge stretch, to say the least. Let me go to the whole issue of solely caused by or solely and exclusively caused by. Let me suggest, the case law that that comes from is exclusively Minnesota case law, not Wisconsin case law, with the exception of a couple of cases that they cited that go back to 1990. There's a case in Wisconsin, and it is Kreifel v. Sizzler. Kreifel v. Sizzler. Sizzler's Steakhouse was found zero liable, but just because it had to defend, I believe it was a breach of warranty claim, it could not file the third part. And the reason that Sizzler was zeroed out or not allowed to pursue the claims is because the court found that there was no wrongful act, such as fraud or breach of fiduciary duty, which is permitted, which is recognized under Weinheim. Yeah, but the point of the case, that's a Wisconsin case. Just like the Minnesota case, the Farr case that Mr. Ronski mentioned, both cases, just the fact that the party had to defend claims against it, even though they were both found zero liable, meant that they could not bring a third party claim. The Kreifel case is hard to read because of the add-on at the end. The holding in Kreifel was that they were not going to extend the wrongful act exception to negligence. And they said that up front and could have ended the opinion there, except for one fact. In the Murray case, the Wisconsin Supreme Court made a reference to not only wrongful acts, but breaches of contract being matters which could give rise to attorney's fees under this exception. In the Fidelity case, one of the circuit courts, the federal court took that and ran with it and expanded that breach of contract type of analysis. And the rest of the opinion in Kreifel was to go through saying this does not fall within that breach of contract exception because it wasn't solely a breach of contract claim. I know it's not a – it's – one of the problems with Kreifel is that that quote has been taken out of context and does not affect the – does not affect the case law when fraud is alleged. Thank you, Mr. Marinas. Anything else? Gentlemen, thank you very much. Thank you for your interesting arguments. We'll take the case under advisement.